IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PHILIP MCFARLAND,

            Plaintiff,

v.                                    CIVIL ACTION NO.   2:12-cv-07997

WELLS FARGO BANK, N.A., et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

In West Virginia, lender liability suits have taken a strange turn that threatens to uproot basic principles of contract law. The plaintiffs in these suits, homeowners tied to mortgages, have concocted a novel theory of injury. That theory is as follows: refinancing a home for more than its fair market value is one-sided and overly harsh against the borrower, justifying rescission of a home loan. I have concluded that this theory is absurd. But it has been repeatedly accepted by other judges. Therefore, with some trepidation, I will explain my view, beginning with the bald statement that neither West Virginia law nor cases outside of this state support the notion that lending too much money is unfair.

Before the court is Defendants Wells Fargo Bank, N.A.'s and U.S. Bank National Association's Motion for Summary Judgment [Docket 46]. For the reasons stated below, the motion is **GRANTED in part** and **DENIED in part**. Counts I, III, and IV are **DISMISSED**.

**I. Background**

In June 2006, the plaintiff refinanced his home and entered into two new loan agreements secured by his home. In the first agreement, the plaintiff signed an adjustable rate note with a principal amount of $181,800 in favor of Wells Fargo Bank, N.A. ("Wells Fargo"). In the second agreement, the plaintiff signed a note for a home equity line of credit with a principal amount of $20,000 in favor of Greentree Mortgage Corporation ("Greentree"). I will refer to these loans collectively as "the loan."

By late 2007, the plaintiff was struggling to keep up with payments on the notes and reached out to Wells Fargo for assistance. The plaintiff alleges that Wells Fargo offered to modify his loan in March 2008, June 2009, and October 2009. Each time, however, Wells Fargo allegedly refused to honor the modification agreements after the plaintiff accepted the offers and signed the contracts.

On May 8, 2010, the plaintiff finally obtained a loan modification, but he was unable to meet his obligations under the modified loan. By 2012, Wells Fargo initiated foreclosure proceedings and the plaintiff brought the instant lawsuit. The Complaint alleges four counts: Count I against Greentree, Wells Fargo, and U.S. Bank National Association ("U.S. Bank") for unconscionable contract; Count II against Greentree for breach of fiduciary duty; Count III against Greentree, Wells Fargo, and U.S. Bank for joint venture and agency; Count IV against Wells Fargo and U.S. Bank for illegal fees; and Count V against Wells Fargo and U.S. Bank for misrepresentation and unconscionable conduct in debt collection. (*See* Compl. [Docket 1-2] ¶¶ 39-57).

**II. Legal Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III. Analysis

#### A. Count I – Unconscionable Contract

The plaintiff alleges that the loan is procedurally and substantively unconscionable and seeks, among other remedies, a release of the deed of trust securing the loan. (*See* Compl. [Docket 1-2], at 9). In support of substantive unconscionability, on which I focus here, the plaintiff brings

two arguments: "(1) that the loan far exceeded the value of the property and (2) that the loan did not provide a net tangible benefit to Mr. McFarland, and instead placed him in a worse situation." (Pl.'s Resp. in Opp. to Def. Wells Fargo and Def. U.S. Bank's Mot. for Summ. J. ("Pl.'s Resp.") [Docket 54], at 15; *see also* Compl. [Docket 1-2] ¶ 42). I will address each of these arguments. Because I find that the plaintiff failed to present evidence in support of substantive unconscionability, I do not address the parties' arguments on procedural unconscionability.

In West Virginia, "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 220 (W. Va. 2012). Although unconscionability was traditionally an equitable defense to enforcement of a contract (*see* 8 *Williston on Contracts* § 18:1 (4th ed. 2013)), it may be asserted as a cause of action in West Virginia. *See* W. Va. Code §§ 46A-2-121, 46A-5-101.

Unconscionability may arise in two distinct ways: procedurally or substantively. "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction." Syl. Pt. 10, *Genesis Healthcare Corp.*, 729 S.E.2d at 221. Courts often analyze "whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction[.]" 8 *Williston on Contracts*, *supra* § 18:10.

In contrast, "[s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Syl. Pt. 12, *Genesis Healthcare Corp.*, 729 S.E.2d at 221. In determining whether contract

4

terms are substantively unconscionable, courts consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Syl. Pt. 8, *State ex rel. Johnson Controls, Inc. v. Tucker*, 729 S.E.2d 808, 812 (W. Va. 2012).

A claimant must prove both procedural and substantive unconscionability to render a contract term unenforceable. *See* Syl. Pt. 9, *Genesis Healthcare Corp.*, 729 S.E.2d at 221; Syl. Pt. 6, *Tucker*, 729 S.E.2d at 812. "However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syl. Pt. 9, *Genesis Healthcare Corp.*, 729 S.E.2d at 221.

"Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." Syl. Pt. 7, *id.* (quoting Syl. Pt. 1, *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 750 (W. Va. 1986)). Whether a contract is unconscionable will necessarily turn upon the facts of each particular case. *See Genesis Healthcare Corp.*, 729 S.E.2d at 229 ("[C]ourts should assess whether a contract provision is substantively unconscionable on a case-by-case basis."); *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640, 659 (W. Va. 2012) (affirming finding of unconscionability "given the particular facts involved in this case").

If a court finds a contract or its terms to be unconscionable, the court "may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result." Syl. Pt. 8, *Genesis Healthcare Corp.*, 729 S.E.2d at 221.

The plaintiff's first argument is that the loan is substantively unconscionable because it exceeds the value of his home. The plaintiff cites a retrospective appraisal finding his home to be worth only $120,000, far less than the defendants' appraisal value of $202,000. (*See* Appraisal [Docket 54-18]). The plaintiff argues that the high value of his loan renders it difficult or impossible to refinance or sell his home. (*See* Pl.'s Resp. [Docket 54], at 14). In response, the defendants argue that a loan worth more than the value of a home is not one-sided because such a loan is as much of a disadvantage to the lender as it is to the borrower.

I **FIND** that a refinanced loan exceeding the value of a home is not evidence of substantive unconscionability. It is not "overly harsh" or "one-sided" against the plaintiff that he received *more* financing than he was allegedly entitled to receive. *See Corder v. Countrywide Home Loans, Inc.*, No. 2:10-cv-0738, 2011 WL 289343, at *9 (S.D. W. Va. Jan. 26, 2011) (Copenhaver, J.). The notion that the plaintiff was harmed by this fact is ridiculous. Consumers using credit cards to incur more charges than they can repay are not disadvantaged by their high credit limits. Students financing their education are not disadvantaged by their ability to obtain such financing. The plaintiff obviously owes a larger debt than he otherwise would if he accepted a smaller loan. But that is exactly how loans work, and there is nothing unfair about it.

If any party is disadvantaged here, it is the lender. When a lender makes a loan with inadequate security, the lender cannot recover the loan principal by foreclosing on the home. While the plaintiff received extra financing, the lender incurred an extra risk of loss at default. Therefore, receiving extra financing is not one-sided against the borrower.

The plaintiff argues that his loan is unconscionable because he allegedly cannot obtain refinancing or sell his home. (*See* Pl.'s Resp. [Docket 54], at 14). Although the plaintiff does not explain, I assume he means that he is without sufficient security with which to refinance or sell his

home. But the plaintiff has not presented any evidence that he was prevented from refinancing or selling his home because it is underwater. And even if he presented such evidence, insufficient security cannot make a loan unconscionable. There is nothing unfair about a homeowner not being able to refinance or sell because he converted his equity into debt. Borrowers do not have a right to refinance or sell their homes. In fact, natural market forces may—and frequently do—push a home's market value below the value of a loan, making it difficult to refinance or sell.

Following the plaintiff's logic, all unsecured loans are substantively unconscionable because the borrower is without security with which to refinance his obligation. That cannot be. Neither unsecured loans nor partially secured loans are unconscionable to either the borrower or the lender.

Not only was the plaintiff not harmed by receiving extra financing, but the plaintiff admits that he received several benefits from it. The plaintiff paid off an approximately $25,000 student loan and a $15,775 car loan. (*See* McFarland Dep. [Docket 54-1], at 30-31, 139; Pl.'s Resp. [Docket 54], at 5, 6).

For the sake of clarity, I should make a distinction. Merely receiving a loan for *any* amount of money, without more, cannot be unconscionable. It is not unfair to receive money that must be paid back. But, after receiving a loan, it may be substantively unconscionable to overpay for a product. Paying an unreasonable price for a product is a classic unconscionability argument. Although it may be unconscionable to overpay for a product, it is not substantively unconscionable merely to receive the financing that enabled one to overpay. Simply receiving a loan for any value—without indications that the loan was otherwise unfair in the amount of interest charged, the timing of payments, or the like—cannot be substantively unconscionable.

The West Virginia Supreme Court of Appeals has not found that a loan exceeding the value

of a home can support a finding of substantive unconscionability. Instead, in *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640 (W. Va. 2012), the court found that *the total cost of a loan* supported a finding of unconscionability combined with other factors. In that case, the plaintiff originally purchased her home in East Wheeling, West Virginia, in 1988 for $35,000. *Brown*, 737 S.E.2d at 647. In 2006, after refinancing her home several times and taking out a series of smaller loans, the plaintiff consolidated all of her debts under a loan for $144,800. *See id.* at 647-50. The circuit court rescinded the loan, finding that it contained several unconscionable terms, "including loan discount points of $5,792, without a fully corresponding reduction in the interest rate or any benefit to Plaintiff; a $107,015.71 balloon payment that was not properly disclosed . . . ; and a loan which was based on an inflated appraisal of $181,700 when the proper fair market value of the Property was $46,000." *Brown*, 737 S.E.2d at 658 (quotation marks omitted). The circuit court also found that the lender "converted Plaintiff's previously-unsecured debt of approximately $25,000 into secured debt . . . thus, putting Plaintiff's home at risk." *Id.*

Without explicitly adopting the reasoning of the circuit court, the Supreme Court of Appeals affirmed. *See id.* at 659. The court then explained:

> This is not a close case. Plaintiff was a single mother to three children who earned $14.36 an hour and who had a well-documented poor credit history. She was not a sophisticated borrower. Quicken's own records describe her as "timid," "fragile" and needing to be handled with "kid gloves." When Plaintiff declined the original $112,000 loan because the payments were too high, Quicken continued to pursue her. It tried to contact her numerous times especially after Mr. Guida's appraisal came in at almost four times the actual fair market value of the property.
>
> Furthermore, as previously established, the loan contained a $107,015.71 balloon payment (of which Plaintiff was not aware prior to closing). *The total cost of the loan was exorbitant, costing Plaintiff an additional $349,000 in monthly payments as compared to her prior mortgage and debts.* From this and all of the evidence presented at trial, we conclude that the circuit court correctly found that, given the particular facts involved in this case, the terms of the loan described above and the loan product, in and of itself, were unconscionable.

*Id.* (emphasis added).

It is important to note what the court did not do. The court did not hold that a loan that exceeds the value of a home is per se substantively unconscionable. Rather, the court found that *the total cost of a loan* may, as one factor among many, indicate substantive unconscionability. The total cost of a loan incorporates much more than the principal value. Total cost includes the interest rate, fees, and the timing of payments, in addition to the initial principal value.

The instant case differs from *Quicken Loans, Inc. v. Brown* because the plaintiff identifies as substantively unconscionable only the loaned amount in relation to the fair market value of his home. (*See* Pl.'s Resp. [Docket 54], at 15; Compl. [Docket 1-2] ¶ 42 ("the loan is for an amount that dramatically exceeded the value of the property that it is secured by")). The plaintiff does not argue or present evidence regarding the total cost of the loan. The instant case also differs in that there are no allegations of unfair interest rates or balloon payments.

"[W]hether a contract provision is substantively unconscionable" should be decided "on a case-by-case basis." *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 229 (W. Va. 2012). I predict that the Supreme Court of Appeals would recognize the absurdity of finding substantive unconscionability based solely on a loan exceeding the value of a home and would reject such a claim. *Quicken Loans, Inc. v. Brown* does not require a different result in this case.

Even though West Virginia law does not recognize that a loan exceeding the value of a home may be substantively unconscionable, several judges on our court find that to be the case. *See, e.g.*, *O'Brien v. Quicken Loans, Inc.*, No. 2:12-cv-5138, 2013 WL 2319248, at *6-7 (S.D. W. Va. May 28, 2013) (Copenhaver, J.); *Petty v. Countrywide Home Loans, Inc.*, No. 3:12-cv-6677, 2013 WL 1837932, at *5-6 (S.D. W. Va. May 1, 2013) (Chambers, C.J.); *Hatcher v. Bank of Am.,*

9

*N.A.*, No. 2:12-cv-5793, 2013 WL 1776091, at *4 (S.D. W. Va. Apr. 25, 2013) (Copenhaver, J.); *Carroll v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-5985, 2013 WL 173728, at *5 (S.D. W. Va. Jan. 16, 2013) (Chambers, C.J.); *Robinson v. Quicken Loans Inc.*, No. 3:12-cv-0981, 2012 WL 3670391, at *2-3 (S.D. W. Va. Aug. 24, 2012) (Chambers, C.J.). For example, in *Petty* and *Hatcher* this court denied motions to dismiss where the only claim in support of substantive unconscionability was that the refinanced loans exceeded the value of the plaintiffs' homes. *See Petty*, 2013 WL 1837932, at *5; *Hatcher*, 2013 WL 1776091, at *4.

I am puzzled that my esteemed colleagues have reached such conclusions. West Virginia law does not require such conclusions, and I can find no cases outside of West Virginia wherein loans exceeding the value of a home are unconscionable. In fact, I can find only one reported case outside this state wherein a litigant made an argument—ultimately unsuccessful—similar to the plaintiff's. *See In re Sullivan*, 346 B.R. 4, 30 (Bankr. D. Mass. 2006) (finding plaintiff failed to present evidence of substantive unconscionability where plaintiff alleged, *inter alia*, that the value of her refinanced mortgage exceeded the value of her equity).

Even though I believe the federal cases cited above incorrectly apply the law of unconscionability, they are nonetheless distinguishable from the instant case. The court in *O'Brien*, *Petty*, *Hatcher*, *Carroll*, and *Robinson* identified an inflated loan value as unconscionable before the parties conducted discovery, whereas discovery is complete in the instant case. *See, e.g.*, *O'Brien*, 2013 WL 2319248, at *6-7, *Petty*, 2013 WL 1837932, at *3-6; *Hatcher*, 2013 WL 1776091, at *3-4; *Carroll*, 2013 WL 173728, at *2-5; *Robinson*, 2012 WL

3670391, at *2-3[1]. This is significant because the West Virginia Consumer Credit and Protection Act ("WVCCPA") encourages courts to allow unconscionability claims to proceed through discovery when plaintiffs merely *claim* that a contract is unconscionable. The relevant WVCCPA provision reads: "If it is *claimed* or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination." W. Va. Code § 46A-2-121(2) (emphasis added). Several cases explicitly cite this WVCCPA provision in denying motions to dismiss. *See, e.g.*, *O'Brien*, 2013 WL 2319248, at *6 ("[T]he WVCCPA emphasizes the need for discovery in assessing unconscionability claims[.]"); *Hatcher*, 2013 WL 1776091, at *3 (same); *Petty*, 2013 WL 1837932, at *4 ("[I]t is clear that unconscionability claims should but rarely be determined based on the pleadings alone[.]") (internal quotation omitted).

      Having determined that a loan exceeding the value of a home is not evidence of substantive unconscionability, I turn to the plaintiff's second argument. The plaintiff maintains that the loan is substantively unconscionable because it "did not provide a net tangible benefit to Mr. McFarland, and instead placed him in a worse situation." (Pl.'s Resp. in Opp. to Def. Wells Fargo and Def. U.S. Bank's Mot. for Summ. J. ("Pl.'s Resp.") [Docket 54], at 15). This argument also fails. There is no requirement that a contract provide a "net tangible benefit" to either party. Whether a contract is unconscionable does not turn on whether a party receives a net tangible benefit from the contract. Rather, to be unconscionable, the contract must be "one-sided and . . . have an overly

---

[1] *Robinson* later proceeded through discovery and the court denied the defendant's motion for summary judgment, stating that "numerous material issues of fact are in genuine dispute." *Robinson v. Quicken Loans, Inc.*, --- F. Supp. 2d. ---, No. 3:12-cv-0981, 2013 WL 6817643, at *5 (S.D. W. Va. Dec. 24, 2013). Among those disputed facts were that Quicken Loans "pressured" the plaintiff into a larger loan than she requested and placed her into a "higher interest rate loan than that for which she qualified." *Id.* The court did not identify or explain which facts related to procedural unconscionability and which facts related to substantive unconscionability.

11

harsh effect on the disadvantaged party." Syl. Pt. 12, *Genesis Healthcare Corp.*, 729 S.E.2d at 221. Further, the plaintiff must point to a particular term or aspect of the contract that he believes is unconscionable. It is not enough to vaguely assert that the contract fails to provide a net tangible benefit. *See id.* at 229 ("[C]ourts should assess whether a contract *provision* is substantively unconscionable on a case-by-case basis.") (analyzing fairness of arbitration clause) (emphasis added); *Tucker*, 729 S.E.2d at 820-22 (arbitration clauses); *Quicken Loans, Inc. v. Brown*, 737 S.E.2d at 659 (balloon payment and total cost of the loan). Therefore, whether the loan provided a net tangible benefit is irrelevant.

It is the court's responsibility to determine whether a contract or provision therein is unconscionable. Syl. Pt. 7, *Genesis Healthcare Corp.*, 729 S.E.2d at 221 (quoting Syl. Pt. 1, *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 750 (W. Va. 1986)). On the facts of this case, I **FIND** that the plaintiff has failed to present any evidence that the loan is substantively unconscionable. Because a plaintiff is required to establish both substantive and procedural unconscionability (*see* Syl. Pt. 9, *Genesis Healthcare Corp.*, 729 S.E.2d at 221; Syl. Pt. 6, *Tucker*, 729 S.E.2d at 812), and the plaintiff has failed to establish substantive unconscionability, I do not address whether the loan is procedurally unconscionable. The defendants' motion for summary judgment on Count I for unconscionable contract is **GRANTED**, and Count I is **DISMISSED**.[2]

### B. Count III – Joint Venture & Agency

In Count III, the plaintiff argues that the defendants are vicariously liable for each other's actions. (*See* Compl. [Docket 1-2] ¶¶ 49-55). This vicarious liability is premised on two separate theories: joint venture and agency. The defendants move for summary judgment, arguing that the plaintiff has failed to present evidence in support of either theory.

---

[2] The defendants also argue that Count I is time-barred. Because I find that the plaintiff failed to present evidence in support of Count I, I do not discuss whether Count I is time-barred.

It is difficult to understand how joint venture and agency can be asserted as independent claims for relief. Joint venture and agency are vehicles for assigning liability to parties who did not themselves commit a wrong. *See Armor v. Lantz*, 535 S.E.2d 737, 742-43 (W. Va. 2000) ("[M]embers of a joint venture are . . . jointly and severally liable for all obligations pertaining to the venture, and the actions of the joint venture bind the individual co-venturers."); *Bailey v. Firemen's Ins. Co.*, 150 S.E. 365, 365 (W. Va. 1929) ("A judgment binding an agent will also bind his principal, where, under authority of the latter, his rights were asserted by the agent.").

Nonetheless, West Virginia courts recognize that joint venture and agency may be asserted as independent claims as long as they are based on other underlying claims. *See, e.g.*, *Croye v. GreenPoint Mortgage Funding, Inc.*, 740 F. Supp. 2d 788, 799-800 (S.D. W. Va. 2010) (Copenhaver, J.) (rejecting argument that claim for joint venture, agency, and conspiracy is not independently cognizable); *see also Carroll v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-5985, 2013 WL 173728, at *5-6 (S.D. W. Va. Jan. 16, 2013) (Chambers, C.J.); *Proffitt v. Greenlight Fin. Servs.*, No. 2:09-cv-1180, 2011 WL 1485576, at *4 (S.D. W. Va. Apr. 19, 2011) (Copenhaver, J.). The Supreme Court of Appeals has repeatedly analyzed claims of joint venture and agency in depth without dismissing them for failure to state a claim. *See, e.g.*, *Herrod v. First Republic Mortgage Corp.*, 625 S.E.2d 373, 383 (W. Va. 2005) (joint venture, agency, and conspiracy); *Price v. Halstead*, 355 S.E.2d 380, 383-84 (W. Va. 1987) (joint venture). Additionally, the court in *Dunn v. Rockwell*, 689 S.E.2d 255 (2009), determined that a claim for civil conspiracy—another form of vicarious liability—could stand as an independent claim, even though the court recognized that "[a] civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort

13

themselves but who shared a common plan for its commission with the actual perpetrator(s)." 689 S.E.2d at 269.

In light of these authorities, the court will assume that West Virginia law permits joint venture and agency to be asserted as an independent claim, provided that such a claim is based upon some other underlying wrong. Therefore, in order to survive summary judgment, the plaintiff's joint venture and agency claim must be based upon an allegation and evidence of some underlying wrong. The court thus examines the Complaint to determine which underlying claims are vicariously attributed to which defendants. Count I for unconscionable contract is directed to "All Defendants," Count II for breach of fiduciary duty is directed to "Defendant Greentree," and Counts IV and V under WVCCPA for illegal fees and misrepresentations are directed to "Wells Fargo & U.S. Bank." Therefore, the only substantive claims against defendants Wells Fargo and U.S. Bank are unconscionable contract, illegal fees, and misrepresentations.

Here, joint venture and agency may not be used to impose liability for unconscionable contract in Count I, as that claim is dismissed. Additionally, the plaintiff has not presented any evidence that there existed a joint venture or agency relationship as to Counts IV and V, which relate to the servicing of the loan. And the plaintiff did not direct Count II for breach of fiduciary duty to U.S. Bank or Wells Fargo; that claim is only asserted against Greentree. Therefore, without a viable underlying claim premised on agency or joint venture asserted against them, Wells Fargo and U.S. Bank cannot be vicariously liable as a result of an agency or joint venture relationship.

If there is any doubt about whether the plaintiff sought to hold Wells Fargo and U.S. Bank liable for Greentree's alleged breach of fiduciary duty, the plaintiff failed to present evidence supporting the existence of any fiduciary relationship. In West Virginia, a plaintiff seeking to recover for a breach of fiduciary duty must first establish that a fiduciary relationship exists. *See*

14

*Elmore v. State Farm Mut. Auto. Ins. Co.*, 504 S.E.2d 893, 898 (W. Va. 1998) (defining fiduciary relationship and determining that no such relationship runs from an insurance carrier to a third-party claimant).

Fiduciary relationships do not exist as a matter of course. In determining whether a fiduciary relationship exists, the court should determine whether a lender has created a special relationship by performing extraordinary services. *See White v. AAMG Const. Lending Ctr.*, 700 S.E.2d 791, 798 (W. Va. 2010) ("[W]here the lender and borrower have a 'special relationship' that extends beyond the contract, the borrower may recover tort-type damages."); Syl. Pt. 6, *Glascock v. City Nat. Bank of W. Va.*, 576 S.E.2d 540, 541 (W. Va. 2002) ("Where a lender making a construction loan to a borrower creates a special relationship with the borrower by maintaining oversight of, or intervening in, the construction process, that relationship brings with it a duty to disclose any information that would be critical to the integrity of the construction project."). Further, "the law does not generally recognize a fiduciary relation between creditor and debtor[.]" *Knapp v. Am. Gen. Fin. Inc.*, 111 F. Supp. 2d 758, 766 (S.D. W. Va. 2000); *see also Wittenberg v. First Indep. Mortgage Co.*, No. 3:10-cv-58, 2011 WL 1357483, at *18 (N.D. W. Va. Apr. 11, 2011) ("West Virginia does not recognize a fiduciary duty between a lender and borrower unless a special relationship has been established.").

Here, the plaintiff has presented no facts indicating that his relationship with Greentree was anything more than that of a typical creditor/broker and borrower. In fact, the plaintiff himself admitted that he did not ask Greentree to "do anything special" for him other than refinance his house. (McFarland Dep. [Docket 54-1], at 82:1-12). The plaintiff merely alleges that he was unsophisticated about finance and unsure of the precise terms of the loan. But those facts do not

give rise to a fiduciary relationship between the plaintiff and Greentree or a vicarious fiduciary relationship between the plaintiff and Wells Fargo or U.S. Bank.

For these reasons, the defendants' motion for summary judgment on Count III is **GRANTED** and Count III is **DISMISSED**.

### C. Count IV – Illegal Fees under WVCCPA

The plaintiff alleges that Wells Fargo charged fees in violation of the WVCCPA. (*See* Compl. [Docket 1-2] ¶¶ 56-57). Specifically, the plaintiff contends that Wells Fargo improperly charged 32 property inspection fees and three broker price opinion fees between February 2008 and August 2011. (*See* Pl.'s Resp. [Docket 54], at 19).

West Virginia Code § 46A-2-115 limits the fees a lender may assess upon default. In relevant part, it provides as follows:

> (a) Except for reasonable expenses including costs and fees authorized by statute incurred in realizing on a security interest, the agreement with respect to a consumer credit sale or a consumer loan may not provide for charges as a result of default by the consumer other than those authorized by this chapter.
>
> (b) A consumer loan secured by real property . . . which includes in the loan agreement a reinstatement period beginning with the trustee notice of foreclosure and ending prior to foreclosure sale, may, in addition to those authorized by this chapter, permit the recovery of the following actual reasonable reinstatement period expenses paid or owed to third parties: (i) Publication costs paid to the publisher of the notice; (ii) appraisal fee when required by the circumstances or by a regulatory authority and only after the loan has been referred to a trustee for foreclosure; (iii) title check and lienholder notification fee not to exceed two hundred dollars, as adjusted from time to time by the increase in the consumer price index for all consumers published by the United States Department of Labor; and (iv) certified mailing costs.

W. Va. Code § 46A-2-115.[3]

According to the plaintiff, Wells Fargo's fees were illegal because "they were not assessed after a notice of sale, and they were not assessed for publication costs, appraisals, title fees, or mailing costs." (Pl.'s Resp. [Docket 54], at 19). The plaintiff argues that all default fees are prohibited except for those expressly enumerated by statute. (*See id.* at 18-19). In response, Wells Fargo contends that the fees were permissible because they were assessed after default for work actually performed in order to "realize on their security interest." (Defs. Wells Fargo and U.S. Bank's Reply in Supp. of Their Mot. for Summ. J. ("Defs.' Reply") [Docket 65], at 18).

The plaintiff's argument that *all* fees are prohibited, save those expressly enumerated by statute, is without merit. Section 46A-2-115 indicates that "reasonable expenses" may be charged by a lender as a result of default, *including* those expressly authorized by statute. Thus, reasonable expenses are permitted, as well as those authorized by statute. This interpretation is consistent with dicta in *Kesling v. Countrywide Home Loans, Inc. See* No. 2:09-cv-588, 2011 WL 227637, at *5 (S.D. W. Va. Jan. 24, 2011) (Copenhaver, J.) (observing that § 46A-2-115(a) "expressly permits consumer loan agreements that provide for recovery of 'reasonable expenses' incurred as a result of 'realizing on a security interest'").

Although the fees assessed to the plaintiff are not per se prohibited by § 46A-2-115, they still must (1) be incurred "in realizing on a security interest" and (2) be reasonable. First, the fees were incurred in realizing on a security interest. It is undisputed that once the plaintiff was in default, Wells Fargo had a right to foreclose on the property. Therefore, the fees were incurred "in

---

[3] Count IV also alleges that Wells Fargo assessed fees in violation of West Virginia Code §§ 46A-2-127 ("Fraudulent, deceptive or misleading representations") and 46A-2-128 ("Unfair or unconscionable means"). It appears to the court that these sections merely address the *means* of collecting fees, not the legality of the underlying fees. The plaintiff does not explain how these sections render Wells Fargo's fees per se illegal. Therefore, the court addresses §§ 127 and 128 in relation to Count V for "Misrepresentations & Unconscionable Conduct in Debt Collection."

realizing on a security interest." *Cf. Banks v. Paul White Chevrolet, Inc.*, 629 S.E.2d 792, 796 n.7 (W. Va. 2006) (finding that lender was not "realizing on a security interest" where it had no legal or contractual right to do so).

Second, I **FIND** that the plaintiff has not presented evidence that the fees were unreasonable. Wells Fargo contends that "[c]onducting inspections of secured property where a loan is in default ensures that the property remains occupied and in good repair." (Defs.' Reply [Docket 65], at 18). Further, Wells Fargo's corporate representative testified that it is the bank's regular practice to review property inspection reports to ensure that the work was actually performed. (*See* Ferguson Dep. [Docket 54-5], at 63:15-20).

In response, the plaintiff argues that the fees were unreasonable because the plaintiff was in regular contact with the bank, negating any need for Wells Fargo to inspect the property. (*See* Pl.'s Resp. [Docket 54], at 19). This assertion is not evidence in support of the plaintiff's claim, and therefore it is not considered for purposes of summary judgment. Next the plaintiff argues that there is no evidence that Wells Fargo received or reviewed reports of the inspections. (*See id.*). But the burden of proof is on the plaintiff. The defendants are not required to negate the plaintiff's assertions. Rather, the defendants satisfy their burden of production at the summary judgment stage by demonstrating that the "evidence is insufficient to establish an essential element of the [plaintiffs'] claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting). The defendants have done that here. In any event, the plaintiff does not dispute the testimony of Wells Fargo's corporate representative that Wells Fargo regularly reviews property inspection reports to ensure that work is actually performed.

Therefore, the defendants' motion for summary judgment on Count IV for illegal fees is **GRANTED**, and Count IV is **DISMISSED**.

**D. Count V – Misrepresentations under the WVCCPA**

The plaintiff alleges that Wells Fargo made misrepresentations in attempting to collect debt in violation of West Virginia Code § 46A-2-127. (*See* Compl. [Docket 1-2] ¶ 60). That section provides in relevant part that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127. The plaintiff further alleges that Wells Fargo engaged in unconscionable means to collect debt in violation of West Virginia Code § 46A-2-128. (*See* Compl. [Docket 1-2] ¶ 59). That section provides in relevant part that "[n]o debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128.

In support, the plaintiff asserts that Wells Fargo misrepresented that it was approving him for loan modifications on March 8, 2008, and June 20, 2009. (*See* Loan Modification Agreements [Dockets 54-14 and 54-15]). Both agreements purported to reduce the plaintiff's monthly payments. The plaintiff and Wells Fargo signed each agreement.[4] (*See id.*). However, it is undisputed that Wells Fargo never honored the agreements. (*See* Ferguson Dep. [Docket 54-5], at 72:2-5; 76:3-7; 77:16-20). Viewing this evidence most favorably to the plaintiff, a reasonable jury could conclude that Wells Fargo violated West Virginia Code §§ 46A-2-127 and 46A-2-128. *Cf. Ranson v. Bank of Am., N.A.*, No. 3:12-cv-5616, 2013 WL 1077093, at *9 (S.D. W. Va. Mar. 14, 2013) (Chambers, C.J.) (finding that plaintiff stated claims under §§ 46A-2-127 and 46A-2-128 where plaintiff alleged, among other things, that bank defendant "told him he qualified for loan modification and would receive one if he completed the requested financial information"); *Koontz*

---

[4] Confusingly, Wells Fargo asserts that the plaintiff failed to present evidence "that Wells Fargo actually signed any loan modification agreement or forbearance plan prior to the loan modification dated May 8, 2010." This statement flies in the face of the March 8, 2008, agreement [Docket 54-14] and the June 20, 2009, agreement [Docket 54-15], which clearly display signatures from Wells Fargo representatives.

*v. Wells Fargo, N.A.*, No. 2:10-cv-00864, 2011 WL 1297519, at *5-6 (S.D. W. Va. Mar. 31, 2011) (Johnston, J.) (finding plaintiff stated a claim under § 46A-2-127 where plaintiff alleged bank defendant misrepresented that it was providing a loan modification).[5] Accordingly, the defendants' motion for summary judgment on Count V is **DENIED**.

### IV. Conclusion

As set out above, the defendants' motion for summary judgment [Docket 46] is **GRANTED in part** and **DENIED in part**. Accordingly, Counts I, III, and IV are **DISMISSED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: May 7, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[5] The plaintiff also contends that Wells Fargo misrepresented to the office of the West Virginia Attorney General the fact that it approved the plaintiff for loan modifications on March 8, 2008, and June 20, 2009. (*See* Letter to WV Attorney General [Docket 46-8], at 2). Neither party explains how alleged misrepresentations to a third party are collections or attempts to collect debt or obtain financial information concerning consumers under West Virginia Code §§ 46A-2-127 or 46A-2-128. I therefore did not consider that evidence here.